## OVERMYER v FULLERTON

Ohio Appeals, 2nd Dist, Franklin Co

No 2517.    Decided Jan 3, 1936

Phil S. Bradford, Columbus, and J. B. Yaw, Columbus, for plaintiff.

C. C. Crabbe, Columbus, and J. L. Sillman, Columbus, for defendant.

### OPINION

By BARNES, PJ.

The above entitled cause is now being determined on appeal from the judgment of the Court of Common Pleas of Franklin County, Ohio.

By agreement of counsel, the cause is submitted in this court on the transcript of the evidence taken in the court below.

By petition and cross-petition, parties plaintiff and defendant set up title to adjoining properties within the City of Columbus, Ohio, and each claims the other is starting to assume possession, ownership and control of a strip of ground about one foot in width along the dividing line.

In other words, the controversy is buttressed around the single question as to what is the true line between Lot No. 1,

owned by plaintiff, and Lot No. 13, owned by defendant.

In plaintiff's petition his premises are describes as follows:

"Being Lot No. One (1), of William B. Hayden's Subdivision of Lot No. One (1), of Nelson's Heirs Subdivision in the City of Columbus, as the same is numbered and delineated in Plat Book No. 4, Page 139, Recorder's Office, Franklin County, Ohio."

Defendant's premises are described in the cross-petition as being Lot No. 13, in Watson and Ryan's Addition to the City of Columbus, said lot being just east of and adjoining the lot No. 1 of William B. Hayden's Subdivision belonging to plaintiff.

The record presents some 270 pages of evidence, most of which is immaterial, irrelevant and lends no aid in the solution of the controversy.

The plaintiff, Mr. Overmyer, is a civil engineer and presents evidence of his personal survey. There is also furnished, on his behalf, the testimony of two other civil engineers residing within the City of Columbus.

The defendant, in support of his contention, calls two civil engineers. The volume of the testimony is largely through the examination and cross-examination of these five civil engineers, including the plaintiff. Very little controversy arises between these witnesses, when limited to evidence of probative force.

In the extended examination of these witnesses on both sides counsel went far afield, even to the point of invading the province of the court. This was attempted to be justified under the theory of calling for engineering practices and methods, little of which had any place or aids any in the determination of the issuable question. It is not within the province of a civil engineer to arbitrarily say that the starting point for surveys should be at any particular place; that occupancy should control or affect surveys; or consider what, in his judgment, would be an equitable adjustment so as to do the least harm to these premises or others which might be affected in the Subdivision. This is all very well when the civil engineer is acting in the interest of a compromise adjustment, and in such instances his familiarity with the law may lend great aid in solving problems and preventing litigation.

However, when the disputed questions come into court, the only aid that the civil engineer can give to the chancellor is the result of his surveys, frequently exemplified measurements. Through these plats and through plats showing monuments and measurements every issuable, helpful fact may be shown, but it is wholly the province of the court to determine the effect that any and all factual data has upon the controversial issue. It very frequently happens that there is a conflict between surveyed lines and established lines. The civil engineer when he has monuments, courses and distances to be determined upon the ground, follows the charted course as directed through recorded plats. Other elements may be considered by the chancellor, such as adverse possession, estoppel, fixed lines by agreement and other considerations.

In the instant case no claim is made by reason of adverse possession. The single, though not simple, question is the determination as to what the true line is between the two properties.

It happens that this line was the dividing line between Outlot No. 1 and Outlot No. 20 of Nelson's Heirs Subdivision, as recorded in Plat Book, Volume 2, page 37, dated October 2, 1869.

From this plat record it would appear that the Nelson Heirs owned some fifty acres of farm land and in this year 1869 caused the same to be subdivided into 25 acre tracts. These several outlots, running from 1 to 20, according to the plat were all equal in area. This farm was bounded on the east by what was then known as Walnut Street, now Woodland Avenue, and on the west by what was known then as Reed, now Taylor Avenue. Walnut Street, now Woodland Avenue, was shown by the plat to be 60 feet in width, and Reed, now Taylor Avenue, 49.5, now 50 feet in width. The measured distance east and west of Outlot No. 1 and Outlot No. 20 started from the center of each of the above avenues. The plat discloses that Outlot No. 1 and Outlot No. 20 were 583.605 feet in length and 186.615 feet in width. It therefore follows that the center line as shown by the plat was actually the midway distance between the center of Woodland Avenue and Taylor Avenue. So far as is disclosed from the record, no monuments of any kind or character marked this center line. If this center line has at all times been maintained, plaintiff's premises, being Inlot No. 1, would be bounded by same on his east line and defendant's premises being Inlot No. 13, would be bounded by the same on his west line.

The question being conclusively determined, it now devolves upon us to inquire whether or not under the record in this

case this line is ascertainable or by any legal methods its location has been changed.

It now develops that the measured distance between the center of Taylor Avenue and Woodland Avenue is some 5.30 feet longer than the plat measurement. Whether or not this excess is accounted for by the average that is frequently found in the remeasurement of old plats or through a change in the location of Taylor and Woodland Avenue, either or both, is now a proper subject of inquiry.

If this overage is accounted for through errors in the original plat measurements from street to street, then it would be a demonstrated fact that the center line would remain the same and that each outlot was in fact by correct measurement 2.63 feet longer than is stated in the plat.

In chronological order the next plat affecting either of these properties is found in Volume 4, page 138, Plat Records, and is known as William B. Hayden's Addition, being a subdivision of above Outlot No. 1. This plat was filed for record in 1888. Herein is shown Inlot 1, now owned by plaintiff in this action. The width is given as 58.6 feet. Immediately west of this Inlot 1 is shown Parkwood Avenue, 60 feet in width, and then to the west line Lots 2 to 12, some facing Parkwood, some Taylor and three facing Clifton to the north. with two alleys, each 20 feet in width, extending south from Clifton. The length and width of each of the lots is shown on the plat. The sum total of all these distances is identical with the plat measurements as shown in the recorded plat filed in 1869. It is claimed in evidence that this plat of 1888 is what is called a paper plat. By this is meant that no engineer actually went on the ground to make measurements, but from the dimensions given in the 1869 plat used those distances and made up this present plat. This theory is urged by reason of the fact that the recorded plat fails to give the name of any surveyor, which appears to be the custom where the same is made from actual measured distances.

The following year, to-wit, November, 1889, Lot No. 20 was subdivided and was recorded as Watson and Ryan's Division, see Plat Record, Volume 4, page 257. Lots 1, 2 and 3 faced Woodland Avenue. Lots 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 faced Clifton Avenue. Lot No. 13 is the most westerly lot and is owned by the defendant in this action. The name of the civil engineer performing the physical labor of

making this plat is given in the record. It seems to have been made by new measurements. This is concluded by reason of the fact that an overage of 2.65 feet was found and taken care of. A tabulation of the dimensions of each of the thirteen lots, plus a 20 foot alley, to the center of Woodland Avenue totals 586.27 feet or 2.66½ more than shown by the plat of 1869.

Defendant's lot appeared to be 37.84 feet in width.

Again, following the chronological order, we find that in 1903 a part of the William B. Hayden Subdivision was changed into a new subdivision by L. R. and H. E. Smith, as shown in Volume 7, page 139, Plat Records. This resubdivision by the Smiths only related to so much of the Hayden Subdivision as was located west of Parkwood Avenue. Inlot No. 1, as subdivided in the Hayden Plat, was not included in the Smith plat.

The Smith plat also shows the name of the civil engineer making same, and it appears that the measurements were actually taken. 1.65 ft. overage was found between Taylor Avenue and Parkwood Avenue. This is shown by the sum total of the widths of the lots, plus one-half of the width of Taylor Avenue. Thus far there appears that one foot overage is not accounted for through any of the plats, although the measured distance from the center of Taylor Avenue to Woodland Avenue discloses unquestionably that there is an overage of practically one foot.

The plaintiff, Mr. Overmyer, insists that this overage would fall to him by reason of the fact that his east line necessarily is the center line between what was originally Outlot 1 and Outlot 20, and we think this contention is well founded unless it can be demonstrated that the present measured half way distance between Taylor Avenue and Woodland Avenue is not in fact the center line established between what was originally Outlot 1 and Outlot 20. If this approximate one foot is added to Lot 1 it then would make the measured distance between the subdivisions identical. If the one foot is added to the subdivisions made up from original Lot No. 1, it must be added to plaintiff's property, since there is no other place to put it. This is by reason of the fact that Lots 1 to 12 of the Smith plat, are bounded on the west by Taylor Avenue and on the east by Parkwood Avenue. Furthermore, these lots, 1 to 12, in the Smith plat show a plat width, and measurement upon the ground discloses that these measurements are cor-

rect. Outlot No. 1 of the original Hayden plat has never received any overage, and while a one foot overage would be a greater proportion than this Inlot No. 1 would be entitled to, yet if it is properly distributed to what was originally old Outlot No. 1, then no one could complain but the Smiths and they apparently have disclaimed any right to the overage in excess of 1.65 feet by virtue of their recorded plat.

As a matter of law we have no difficulty in determining that the west line of Lot 13 may not be extended over this center line, wherever properly located. Of course, the center line, in the absence of any controlling evidence to the contrary, is fixed by the actual measured distance between the center of Taylor Avenue and Woodland Avenue, as the same existed in 1869. If there has been no change in the location of Taylor Avenue and Woodland Avenue, then the actual measured distance should be the same then as now, and the center line would be the same now as then. When a street is located and dedicated to public use, it is presumed to remain in that location unless evidence is presented to the contrary. Defendant presents evidence from his engineers that it is thought possible that Woodland Avenue may not now be in the same location as in 1869. This is based on the theory that Woodland Avenue does not now appear to be parallel with Taylor Avenue, whereas the distances given in the Nelson Heirs Subdivision of 1869 would indicate that the two streets were parallel. We can not think that there is sufficient divergence from parallel lines to warrant this inference. If there is any variance, it is nothing more than what might naturally arise from the lack of precision instruments.

Evidence is also presented that Parkwood Avenue, as it extends north from Clifton Avenue, should have its center line midway between Woodland and Taylor Avenues, whereas, in fact, its center line is west of such true line. It was further presented that the present center line of Parkwood, lying north of Clifton, if extended south would take about 1½ feet off of the Overmyer lot.

This evidence was objected to and we reject same as irrelevant and incompetent. What was done in another subdivision or the reasons therefor can have no effect on title or division lines of property in another subdivision owned by entirely different persons.

It is also urged that the actual improvement and occupancy with residences and so forth in the Watson and Ryan Subdivision should be considered in determining this line. We have no difficulty in determining that this question can be given no consideration whatever. Nothing else than claimed adverse possession can affect or change the true line. In the instant case no issue is made nor is any evidence introduced through which we could make any determination upon the ground of adverse possession.

The evidence of engineers Thomas and Sheridan in substance that they found a wooden stake at the corner of Lot 12, which would conform to the measured distance from Parkwood Street by giving each lot between these points its proper footage width, as shown by the plats, has no probative force, since it lends no aid in determining the center line, nor does it take into proper consideration the overage of substantially one foot.

Neither does the metes and bounds width of plaintiff's lot, as shown by the plat, solve the problem. There is no controversy that his Inlot No. 1 is a part of the Hayden Subdivision and all in turn is a part of Outlot No. 1 of the Nelson Heirs Subdivision platted in 1869. Overmyer's lot comes up to this dividing line so designated in the old Nelson Heirs Subdivision, unless perchance its location has been changed by legal methods. Included in legal methods may be taken into consideration, in a proper case, adverse possession, estoppel, location by agreement and other elements known to the law. The fact of the addition of substantially one foot to the plat measurements of plaintiff's lot does not preclude the necessity of determining the true line. In all of the plats referred to the overage has been found and taken care of except this mentioned one foot. Under all the evidence in the case we think this one foot belongs to what was originally Outlot No. 1 in Nelson's Heirs Subdivision. What was formerly Outlot No. 20 has received its proper proportion and in so doing has not extended over the center line.

Considering the evidence as a whole, it is our conclusion that the true line between plaintiff's and defendant's premises is the center line between the centers of Taylor Avenue and Woodland Avenue, as now constructed. Finding this, we are supporting the claim and contention of the plaintiff. Judgment will therefore be entered for the plaintiff, in accordance with

this opinion and costs will be adjudged against the defendant.

Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.